Good morning, Your Honor. Michael Bauman, Kirkland & Ellis, on behalf of the Fleming Post Confirmation Trust, which is a trust that exists now solely for the purpose of distributing assets to creditors. The issues on appeal, Your Honor, that I wish to address are first with regard to the registration. The Ninth Circuit spoke very clearly in the Kodadec case that what is required to properly register a copyright is that bona fide copies of the original work only should be deposited. In this case, there's no question that that did not occur. What did, what the testimony was at trial was that, in fact, that there had been either hundreds or dozens of changes made to what was described in the registration statement as a work that was published in 1995 and created in 1993. Now, that was the trial testimony. It's at our excerpts at 130, 133, and at 132. What was put into the record as registration is a January, I mean, September 27, 1999 certification. There's a line item on it where you have to sign it. It gives you an instruction that says, do not sign this before the date of publication. It requires you to certify under oath that what is attached is what you are representing it to be. What then occurred after that date in the record was that Mr. Berry, the developer of the software, then made additional changes in October of 1999. And what he described as essentially a new software was put onto the system as part of a sale. He had developed this as part of a company called API. API was being acquired by Fleming. What they wanted was this logistics system. He then placed that with changes onto the computers at Fleming, and then they negotiated a license agreement where he received a free license. So subsequent to the time, even of the September 27 certification, he made additional changes to the software. What was the instruction to the jury on this issue? On the issue of the registration, I don't believe there was an instruction to the jury. I do not believe so, Your Honor. Did you ask for one? I don't think so. I think it was viewed as a matter of law, an issue of law, that for determination by the court, whether or not, in fact, there was a registered copyright as a jurisdictional prerequisite not to owning a copyright but to being able to sue someone for infringement of a copyright. And that issue was raised. And you asked to have the case dismissed because of lack of registration? They asked for judgment, Your Honor, on what it was that was presented. Recall that all this does is say that if you want to sue someone for infringement and obtain statutory damages for copyright or attorney's fees or lost profits, all of the extras that are provided for it. Does the laws and regulations surrounding registration require that an exact copy be deposited? It's duplicate originals. I mean, it's the best that's available, I think. But it cannot be different from what you are attempting to register. That's clear under code of death. Is there a language about a virtual, virtually identical? Virtually identical, I think, is appropriate. It's virtually identical. In fact, if you do 20 pages of source code, 20 pages at the end, then you can tell that what you have in the middle, because it's all going to line up. Doesn't 37 CFR 202.20 say it does not have to be a virtually identical copy, as long as the identifying portions of the source code are revealed, that's sufficient? Your Honor, I think what that's dealing with is what I just referred to, that you don't have to put the entire source code into the record, but it does require the first 20 pages and the last 20 pages for the purpose of knowing that if you go back to look at it, it's going to line up. What they don't require you to do is put everything into the record. Was there any finding in the trial court that Berry had engaged in fraud or that your client was prejudiced by any inadequate registration? I don't believe there was, and I don't believe that's a requirement for there to be a failure to properly register a copyright and bring a suit on it. Recall that with a computer code like this, if you make subsequent changes, and this was what the underlying lawsuit was about, there are derivatives created. That's the accusation and allegation. But in this case, there was no registration of any derivative of the copyright. There was nothing in the copyright registration going back to 93 and 95 saying that what he was really registering was a derivative. When he changed it again and put it on the system in October of 1999, and as he called it, it's like brand-new software that is unstable and didn't want the employees to use it, again, you have a derivative and there's no registration. That is a jurisdictional prerequisite to making the claim for infringement. Now, that's different, understand, from the licensing agreement. He can license. If you look at the licensing agreement, it doesn't say copyrighted material. It says any freight control system that you developed during the course of this time, I am giving you a free license to use. He could have sued for breach of contract, but the breach of contract damages are not what he wants in this case because there's essentially no real damages. What he wanted was copyright infringement, and there's a failure to properly register it. That's a jurisdictional prerequisite. It's not a footfall. It's not a technical violation. It's a jurisdictional prerequisite. Then if you go to the next portion of the argument, which is Section 117, on Section 117, the argument in the answering brief has to do with the Ninth Circuit's holding in MAI. And I would submit that MAI is a footnote without analysis, and there was an alternative grounds for the ruling in that decision. MAI has been criticized extensively in NIMR and in other cases and resulted in some changes in law in Congress. And the point of this is that when you give someone, when you do what Mr. Berry did in this case without refutation, which is to install a software system on it for the user, then what 117 says, it is not an infringement of copyright law for you then to keep the system up and running, for you to make the necessary. Now, does 117 apply at all? Is your client the owner? For purposes of 117, I do believe my client meets the definition. What I would suggest is the definition that has been used by the Second Circuit. What MAI said in a footnote was that if you're a licensee, you can't be an owner. If you look at the legislative history and the critique of the MAI decision, I don't think that was a holding of MAI. The purpose behind this is to permit someone who receives software, and if you think of the simplest system that you use, Microsoft Word, comes loaded with lots of different things that you may or may not want to include, and you're permitted to take it off. You're permitted to develop your own logo. Every time my firm turns it on, there's a headline that comes in that puts the name of my firm on it. Now, that's a modification to the software system, and what Congress looked at, particularly with regard to computer software, was to say that cannot be a violation. And if you look at the legislative history of that, it was very clear that it was intended to apply to licensors and licensees. There's no distinction that should be made with regard to ownership. What the Second Circuit looked at and said was that you have to look at the bucket of rights that you receive as an owner, that it's not merely property ownership, because you license the software. He has the copyright in the software. The disk or the hard drive of the computer that it was placed on was owned by Fleming at that time. So that's not going to be the determining factor in whether you're allowed to make any changes to it to make it work for you. The testimony of record in his brief and other places with regard to the changes that were made are that it was used precisely the way it had been designed to be used to allow the operation of the business. The company gets new entities that ships. It adds some line to the software so that it can develop invoices or can record the incoming goods and shipment. And that, I would submit under Krauss and Ames v. Bonelli in the Second Circuit, the cases we cited, is the right way to look at the rights. Were we doing something that was in effect intruding upon the ability of the developer of the software to go market this to someone else? He had already marketed it to us. We had a license to use it for free. You admit you're a licensee or do you claim to be an owner? I'm not sure I follow. Well, the license is to use the software. The distinction that has been criticized in MAI and I think in the subsequent wall data Ninth Circuit decision recognizing the criticism is that distinguishing an owner and a licensee makes no sense in the context of computer software. Everybody licenses the software itself. They then give you a disk. The issue is whether you're the owner of the hard item on which that software appears. I can't go out and sell my disk of Microsoft Word to someone else. But what I can do is put it on my system and then I can make it work the way I want to make it work. I can add macros. I can delete portions of it that I don't need, that I don't want. I can throw it away and burn it at the end of the time. I don't have to ship it back to Microsoft and tell them that I'm no longer using it. Now, that's the difference. I am a licensee, but I'm an owner of the copy, not of the software, not of what's in it. That remains with, in this case, Mr. Berry. And that was never the subject of dispute. So, and a license, again, is a contractual matter. We don't have a breach of contract claim or an allegation or claim that there was a breach of contract here. This is an infringement claim saying that the types of changes that were made to use this software that Mr. Berry developed for this company, that he himself put it on the computers of the company, was being used exactly the way it was intended to be used. And what he did was to come in and say subsequently, I can point out that you deleted a table from my software. You no longer use this functionality. And that was true. But that's exactly and precisely what Section 117 was intended to permit the user of this software to do, the owner of the copy. And the jury called on to answer with respect to this. Anything? Or is that a finding of fact or law by the court also? I think it's a, I believe it's an argument of law. The jury was instructed on law with respect to the 117 issue. But the evidence is clear. Was there anything wrong with the instructions? No, I don't believe. We have not contended that there is anything wrong with the instruction that was given. So then the jury got it as a factual issue to be resolved, and they resolved it against your party. Well, the only answer, the only question that was put to the jury with respect to were there changes made that were authorized, were they allowed to make changes. Now, that's a licensing agreement issue, and the thrust of the dispute and what the jury addressed was the issue of whether or not under the license you're permitted to make changes. That's a completely separate issue from whether or not there can be infringement under Section 117. And what was requested of the court below and what we'd ask is that based on the evidence that, in fact, every change was within the business, there were originally accusations and claims made below that copies of the software had been distributed to other entities or sold to other entities, and the plaintiff lost on all of that. It was only used within the business. Now, given those facts, the appropriate application of 117 is to say that there is no infringement. And we're not seeking a retrial on this. You know, frankly, we're a liquidating trust, and the amount at issue isn't significant enough. But it is a significant issue with respect to copyright law, and it does have some implications. And I apologize for not having provided this in written notice, but there is a related case now pending in the Ninth Circuit. There was a subsequent round of litigation post the bankruptcy that had to do with the use of this software, and there's an appeal from that decision, and there is now additional litigation being filed with respect to others accused of potentially improperly using the copyrighted material. So there are implications that remain, both with respect to whether there's a properly registered copyright that would allow this individual to bring these copyright claims, and with respect to whether or not the types of changes that Fleming made at the time were permissible. The next couple of issues that I would like to talk about are fairly related, and the first has to do with the willfulness instruction. Under the revised Ninth Circuit model rules, the willfulness instruction was incorrect. It used that it may violate, it may be an infringement. And the word may has been taken out. The requirement under pure international, the Ninth Circuit decision, is that the alleged infringer must act with knowledge that the defendant's conduct constitutes copyright infringement. Now, I am not arguing, again, I believe that if you look at the record and what was developed below, that it's clear that the standard is not met with knowledge. We had a license, as the jury found. We believe the license permitted changes to be made. There's multiple cases in this circuit that where you have a license and you have reason to believe that it's okay to do what you're doing, it's not a willful violation. We'd ask that the willfulness portion of it be reversed. It has to do only with the maximum statutory damages,  that if it's not willful, that you go back to the maximum statutory damages for a non-willful violation. And that goes to the attorney's fees and costs. One of the reasons we were denied, notwithstanding substantial success, attorney's fees was because the Court said there was a willful determination, and therefore he would not treat us as a prevailing party, notwithstanding that the bulk of the issues we prevailed on. The jury found willfulness, and if they were wrongly instructed, shouldn't it go back for retrial? I don't believe so, Your Honor. And the reason, if it does, then I would ask that it be solely limited to that issue because it is separate and apart from all of the other issues that have been tried in the case. But I believe that on the record that is here, that there really is not much point in sending it back. The testimony was developed and exists in the record. It's not very difficult. There's no question that there's a license. Plaintiff has not appealed the decisions with respect to the other software-alleged infringement. He did not appeal with respect to, you know, other issues that he dropped at the time of trial alleging that we distributed to others. So clearly, if there's going to be a remand, it should be very limited and focused narrowly on just that willful issue. But as I said, because it's a statutory penalty and deals only with the maximum amount that can be collected, I believe it's within your authority simply to say that it was not willful based on what's in the record. Was that objected to at the trial level when the Court gave that instruction? Yes, Your Honor. Did you have an alternative instruction or just say it should not be given under the circumstances? I — the way that I read the transcript, I was not there below the way I read it. Your party. I did. And as I read the transcript, there was an offer of an alternative instruction that was going to be submitted in writing on the record. There was a clear objection to the May language and a citation to the Ninth Circuit case that resulted in the change of the jury instruction. So all that was covered. But I don't know, frankly, Your Honor, if there was — if, in fact, a piece of paper was handed to the Court, and I don't know that it's in the record. I haven't seen it. Okay. You have some time for rebuttal. Mr. Hogan. May it please the Court, my name is Timothy Hogan. I represent Wayne Berry. I thought I'd address some of the things that — I've got a little thing that I wanted to present, but I thought I'd go back and go through what was just discussed. We're not talking about a reconstruction, and it's very important to remember in regard to the deposit that the exact work that is claimed to have been infringed is the work that's in the Library of Congress. No dispute over that. It isn't a recreation. It is the original work. I went back and looked at the registration and I looked at the statute, and the registration asks the year in which the creation of this work was completed. Now, my wife and I had a child in 1990. That was the year that child was created. I dropped him off at school before I got on the plane to come here. It doesn't look anything like the kid I had in 1990, but that was the year creation was completed. What — and this is a rhetorical question — what relevance would this question be other than when was it first fixed in any tangible media? When did the copyright arise? And I would offer the court that going back through the history of Windows into DOS, that the beginning of those programs occurred when IBM wrote DOS, and I'll bet you they don't have a copy of that. All the Windows programs going forward are built on DOS. If they don't have a copy of DOS, if they can't reproduce it according to the argument that's being made, all the Microsoft Windows copyrights are void. That's a pretty harsh result. Mr. Berry created the work in 93. There was never a competing deposit put in the record. And the Sixth Circuit case that's been cited, in which basically say you better preserve your work, that's true if someone brings up one that says 1982 on it, and you can't beat them. But no one ever claimed anyone wrote this other than Mr. Berry. It's clear he wrote it. The work changed over time, but the work that was registered was the work that was infringed, and that's the key in a deposit. I made an argument in my brief on primary jurisdiction. The Copyright Office makes the decision on this. It says right in the regs. It's the one they say is the best. And I know that the courts of appeals don't necessarily defer to administrative agencies, but when it comes to something as fundamental and as important as what a copyright in software is, I think they deserve some degree of deference. In this case, the argument that there's a jurisdictional defect in this filing is wrong. The jurisdictional statute says he must have one. GeoScan says they didn't have one. Of course that case is going to go. You didn't get one. Mr. Berry has one. That's the jurisdictional issue. The statute then says the district court can give it whatever weight the district court wants to. It's discretionary. Went to the jury. There was an instruction on the deposit, instruction number 20, and it's the first and last 25 pages if it's more than 50 pages in length. It's right out of the statute or out of the regs. They did not object to the registration all the way through the case. If you look at the summary judgment motions, it was the deposit that was bad. Well, it made no sense. It kept saying, well, we want the first draft. And I kept saying, well, why don't we call Farewell to Arms a proud aloha to weaponry then, because that's maybe what Hemingway called it when he first wrote it. You want the work. You want to prove that it was created at a certain date. There was no evidence to rebut the creation date is 1993. So I do not concede for one moment that this registration is defective. In fact, I state emphatically it is absolutely the way it's intended to be. Kennedy, what goes into the registration? Is it a copy of the original or a copy as it's modified? The one that was in there, it has all the modifications in it. It's the ex — it's everything that was in there. It's if I were to deposit my son, it's 6'2 and looks very different than the baby. But that's the thing that's going to be infringed. That's what he looks like now. That's what was deposited. And there's no claim that what was — and the case from the Sixth Circuit talks about it has to be a copy of the work that's in the infringement. The district court cites that. That's exactly what's in there. So the question is — their argument is if you didn't keep the first draft — and now, what draft would that be in 1993? Because the statute says copyright arises when it's first fixed. So I would say when you put a dot on a paper, you might have to submit that. Congress was right. And Congress — that — the thing in the copyright registration comes right out of the statute. It's 409 of Title 17, Number 7. The year in which the creation of the work was completed. Not that the work was completed. The creation of the work. I went back and looked at the dictionary. What creation means? It doesn't mean everything went on after creation. It's what happened at the moment of creation. So I would say what Mr. Berry has deposited is the correct deposit. The Copyright Office says we don't want all your trade secrets. Twenty-five and twenty-five, you could have anything in the middle of that. It's that thick. Two phone books. And he didn't have to even put that in. He took the exact word for word. You could sit down at a computer, type in what's in his deposit, and recreate the work. That's what he was required to do. He didn't even have to do that. He did. And there's never been any showing of prejudice. Their prejudice is the work he deposited looked too much like the one they infringed. I would offer that's not a legitimate prejudice. The 117. My system, I understand that there's claim that it's being criticized, but it's still the law. And I went back and looked at the Crouse decision, and I think under Crouse, if I may, you can see that they're not an owner. Even under the Second Circuit, it's very expansive. I think, actually, it's difficult. I think you can have derivative infringement in the Second Circuit if you happen to do business with somebody. Substantial consideration for sole benefit. First thing that Crouse talks about. Didn't get anything. Nothing. And it wasn't made for Fleming. It was made for another company. It gave absolutely no money, and it wasn't for them. So the first consideration in Crouse, Mr. Berry wins, that it was customized for Fleming's operation. It wasn't. He just put it on there and said, good luck to you. There it is. You need a copy of software? Just don't touch it. That they were stored on the server owned by TitleServe, which was the Crouse case. The evidence is clear. Up until the time he put it on their machine, it was in his home in Pupukea, which is the north shore of Hawaii, up in the boondocks, sitting up there, and it never was on there. That's the record. Never had it on their server. They talk about in Crouse that they had the right to repossess. In his EULA, he said that if I tell you, if you violate this, you have to destroy your copies. He maintained control over the bundle of rights as to that software. And finally, Fleming admits that it wasn't an owner of a copy. They admit that this product is licensed, not sold. If there was ever a case standing, you can say you agree fully with the Second Circuit on Crouse and absolutely fine for Mr. Berry. Because if there was ever a case in which Crouse shows that these people were not an owner of a copy, this is the case. Now, they didn't need to make these changes. Dillon cites in the testimony of Mark Dillon at the supplemental excerpts 77 and 78, at 62.6 and 63.5, he admits that they didn't have to make the changes. They felt like making them. These were reserved rights. Mr. Berry put this on there because he's been on there a living making the changes. They asked him in excerpt of records, their excerpts, 31. I'm sorry. They asked him, how can we work out how to pay it? It's excerpt of record 20. They say, how are we going to pay you? Well, we'll give you a savings from what you generate. They knew that. He preserves his right in his EULA. Then you go to they claim the EULA is not the issue. You go to their letter and it says in it that he owns all the copies and that it is licensed, not sold. If ever 117 does not apply, this is the case. This is not a case where you buy a copy of Windows and put it on your machine. And if Microsoft says you can change it, that's their business. But if you go in and reverse compile and crack Windows saying, you know, I really would like to change these, I will willingly bet that their license would prohibit that. I don't have their license in front of me, but that's their right to control their software. They don't want people breaking their software. And in this case, they never, ever owned a copy. They never paid him. And I think that's the end of the analysis in terms of 117. He says that's a breach of contract cause of action rather than a copyright. Well, no, I disagree with that, Your Honor. I think that the derivative, the right to recast and modify and make changes is reserved under 106. That was his right. That's how he's going to earn his living. And that isn't they agreed to that. They said even if you talk about it, that they claim that they have this right to make changes. If you go back to their letter and you go into where they were told, and I'll sort of segue into the willfulness, is they were told by one of the employees, Amy Wardlaw, that you can't do that. This is excerpt 31. However, this is technically in violation of the license agreement presented to us by Wayne Berry on Friday. It's complicated, but if you just look at the one thing, it talks about the TSI interface. Whatever that is, that is the TSI interface. Then they go in into the letter, which is at the page, excerpt of record 35. They talk about the TSI interface. And in it, they say they're going to go ask Wayne Berry later if they can change it. They never claimed the right to change it. They knew that's what he did for a living. They knew that if they did that, they were told it would be willful infringement. And, in fact, it was willful. The jury got it absolutely right. This was willful infringement. You're saying it's willful because this lady had told them that it's in violation of their agreement, right? Not only her, but, yes, that's the first step. You then go to E035, the second paragraph down, and he's talking about it here to Wayne Berry, saying, you know, I don't really understand what that is, but if this interface cannot be accomplished, we plan to discuss further with you the purpose of the TSI interface for the system for a less expensive alternative. He didn't claim the right to make the change. He went back to the developer consistently with the earlier understanding and then did not – he had to have recognized that this would have been a violation of Mr. Berry's rights. And at that point, Mr. Berry pulled the plug. Dylan admitted later that he did the changes, that he removed the TSI interface with his Fleming PO change, and there was a willful instruction. Now, Mr. Baumann has indicated that there was a change in the model instruction. We gave the model instruction. So it was okay when we gave it, and there was an objection. I'll concede that there was an objection placed during the settling of the instructions, not on the deposit, not on the registration, no request for a fraud instruction, no claim of fraud in the case, which would be what it would necessarily knock out the registration. They didn't ask for it, and now they're claiming it's jurisdictional. It's not. It's retrying the case. The willfulness was not under a 50A motion. They brought it as a motion for new trial and alter and amend. It's a very weak standard. 50A and B is pretty weak. They're asking to take away from the court, from the jury, the issues of fact on whether it was a good instruction, I mean, a good registration. Well, it is, and it was. Whether the deposit was correct. It is, and it was. Whether there was evidence of willfulness. Well, you have to be there. This didn't just happen in a vacuum. This was a week and a half of trial where up was down, black was white, day was night. Nobody agreed with anybody, and the jury had to sort it out. This was not simple. And before I came in here, I went back and pulled out my little Constitution, Warren Burger gave me this on an elevator before I was a lawyer, and I looked up the Seventh Amendment, and I didn't realize that the standard of review are in there. It doesn't just say you have a right to a jury trial. It says when you get one, the rules are different as to whether it gets thrown out. And I didn't realize standard of review. I'm not a judicial scholar, but it's in the Seventh Amendment. And under the standards of review that applied in this case, this case cannot be reversed. It has to stand. Jury made the call. They weren't asked to decide things. The judge didn't make a mistake on the instruction, on the deposit and all those things. He wasn't asked to do it. There's nothing to preserve it. The issue of the registration wasn't even raised until the briefs. The issue of the willfulness instruction being wrong is not even in the brief. Clearly, the circuit has changed the model instruction, but I don't know if that's retroactive. As far as going back and doing this case over again, I dread the thought. But the reality is if I wouldn't choose statutory damages if I went back and did it again, I need to alert the Court that there has been a subsequent judgment on the merits, finding infringement with the same deposit, same registration, same party that we have in here today. That has not been appealed. That judgment is, I believe, collateral estoppel. As to the issue of registration, deposit, and all the other issues that come out of a necessary judgment in a copyright infringement case, Fleming was found an infringer. I don't understand when that occurred. Does that occur after this trial itself? It occurred after this trial, and it was entered in March of last year. It's been a little over a year. Does it involve the same issues? As far as the registration, I looked at the circuit rule, and it said if the case is moot, you have to notify the panel. The case is not moot. The registration issue, I believe, is I don't know if I call it moot. I pondered that. It's collateral estoppel. If you were to reverse on it, I've got a judgment against them that has not been appealed on the same issues. So I don't know where that shakes out. And this is not your normal case. And this is why I'm here. I'm a cross-appellant trying to get an injunction. I can't get one. And I fear I'll be doing this when I'm 100 years old because they won't stop using the work. Now, we look at the Polo, the cases that were out of business. Well, yeah, but they could still afford Kirkland & Ellis, which is pretty good for people out of business. The reality is this case hasn't stopped. They are supporting people who we have claims of infringement. They are an operating entity that files tax returns. And this is the important thing. Bankruptcy code doesn't just take all the property of the debtor and throw it in the dustbin. Wasn't there evidence that Fleming removed any changes to the FCS following the jury verdict? Well, that's what they claimed to have done. And I would offer to you, Your Honor, that that's a derivative. Is that what the district court found they had done in refusing an injunction? So it's not a claim. No. What the district court found. Well, we're talking about Judge Mulway in the second case. She said I didn't meet the standard of likelihood of success on the merits. But I did win. I won. And I won on summary judgment in front of Judge Mulway. So at the point that this was ---- Maybe I'm confused. In this case, you asked for and were denied an injunction. That's correct. In the course of stating its reasons for refusing an injunction, did not the district court in this case find that Fleming had erased the changes, if you will? I don't think we've gotten to that. I believe that Judge Mulway's order said that whatever they were doing didn't seem ---- Why are we talking about Judge Mulway's order? Because that's what the basis in the order for Judge King. If you look at his order, he cites the case and says I'm going to go with what she said. And it seems like on that record it was a good way to go. And I'm going to go like that. And all I'm saying is we had to prove that we had a risk that they'd infringe again. I proved it. They did. At least maybe we should have a bright line, maybe three. If I get three of them, I get an injunction, four. I know that's being cute. And I'm just saying there's a point where it's so much easier to enjoin someone than to burden. These cases are huge. The dockets, this one was like 300 in the docket. It's over 1,000 in the second case. It's a waste of everybody's time and money and resources, judicial resources, to simply give us an injunction or allow it to go back on an evidentiary record to the district court to let the court because you don't want to force a judge to have an injunction. And I understand that. It's a big deal. But it just seems that when someone has the burden to prove that they might infringe again and you did prove they did infringe again, that that would be the time to enter an injunction. On the attorney's fees, I can see my time is winding down. I believe the cases are clear that Mr. Berry was a prevailing party. He prevailed on ownership, copyrightability, and on infringement. And, yes, the $150,000 was the most that Congress said that he could have gotten, but he got 98 and change, I believe, plus the attorney's fees. I just want to make sure it's clear that the copyright software that is the subject of this case is the software  There's no question that it wasn't a reconstruction. The code of that case, the cases that are cited are simply inapplicable. This is software, not a picture of Beavis and Butthead. It is something that even the Copyright Office says you don't have to put the whole thing in there. And so I'd ask you to defer to the Copyright Office on this or at least defer to the jury that the case was submitted to the jury. They made their decision, and I think that under the standards of review, it has to be affirmed other than the injunction. Thank you. Thank you for your argument. Rebuttal? Counsel? Thank you, Your Honor. On the injunction, what the district court said was that they agreed with Fleming that the passage of time since the verdict or request for permanent injunction is now pointless. Fleming cannot resume using the software because it essentially is no longer in operation. That's never been challenged, and it's, in fact, true. With regard to the subsequent ---- Well, is it operating now? It's not operating. Fleming is not operating. It does not use any freight tracking software. It doesn't sell grocery goods. It's not in the wholesale business. It has sold off its assets in the bankruptcy pursuant to a reorganization plan. With respect to ---- I want to go to Section 117 for a minute. I think I've made the arguments on the other points, but the Section 117 argument, I think this case illustrates why it's important for this Court to look at MAI and the subsequent Waldata decision to actually address whether or not it's going to follow what the Second Circuit did and adopt what I believe was the intent of Congress with respect to the adoption of the final report of the National Commission on New Technological Uses of Copyrighted Works and recognize that once you have something on your system that is computer and software-based, every time you start it up, every time you make a change, technically, under the old rules, you would have been violating copyright law because you were making a copy or making a derivative. And Congress looked at that and said that makes no sense. It makes no sense for the licensors. It makes no sense for the licensees. So we've adopted a revision that permits you to make changes, to keep the system functioning, to make it efficient, to make it work the way you're supposed to make it work. Now, they are using, they are attempting and did to extract what is a contractual promise out of this. They're saying we thought we had a contract with you that we would be the only people to make the change. That is different from an infringement of the copyright under 117. 117 is not an exception. It says flat out that if you are making changes in the use within the system for something that you're in lawful possession of, that you are not infringing the copyright by making those changes. And that's what the evidence and testimony is. Roberts. Thank you, counsel. Thank you both for your arguments. Very interesting case. We'll submit it for decision, and we'll proceed to the last case on this morning's calendar, which is Dillettsoe v. Potter. Counsel will come forward. I'm sure you'll correct me on the pronunciation.
judges: B. Fletcher, Siler , Hawkins